IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KATHY A. FERRELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )  Case No.: **3:10-cv-00353-JPG-PMF** |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

### REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Philip M. Frazier from United States District Judge J. Phil Gilbert pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation. Plaintiff Kathy A. Ferrell ("Ferrell") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "SSA") denying her application for disability insurance benefits filed on or about August 15, 2006. Ferrell's application was denied by Administrative Law Judge ("ALJ") Gail Reich when she rendered a decision finding Ferrell not disabled (Tr. 7 – 19). That decision became final when the Appeals Council declined to review the ALJ's findings (Tr. 1 – 5). Judicial Review of the Commissioner's final decisions is authorized by 42 U.S.C. § 405(g).

For the reasons set forth below, it is **RECOMMENDED** that the final decision of the Commissioner be **AFFIRMED,** and that the Court adopt the following findings of fact and conclusions of law:

## I.     FINDINGS OF FACT

### A. *Procedural History*

On August 15, 2006 Ferrell filed her application for Disability Insurance Benefits ("DIB") alleging disability beginning July 5, 2006. (Tr. 84). The application was denied initially on September 19, 2006, and again upon reconsideration on January 5, 2007. (Tr. 66 – 79). Ferrell timely filed her written request for a hearing on January 29, 2007. (Tr. 80 – 81). On March 3, 2009, Ferrell appeared and testified at a hearing before ALJ Reich. (Tr. 25 – 65). On April 29, 2009, the ALJ issued an unfavorable decision finding Ferrell not disabled. (Tr. 7 – 19). On or about June 26, 2009, Ferrell timely filed her Request for Review of Hearing Decision. (Tr. 6). On March 12, 2009, the Appeals Council of the Social Security Administration ("Appeals Council") denied Ferrell's Request for Review. (Tr. 1 – 5). The April 29, 2009 decision of the ALJ stands as the final decision of the Commissioner, and Ferrell has exhausted all of her administrative remedies.

### B. *Substantive History*

Ferrell was 47 years old as of her alleged July 5, 2006 onset of disability, and reached age 50 prior to the ALJ's decision. (Tr. 17). She had a high school education and past skilled and semi-skilled work as a daycare center director, bus driver, office manager, and nursing services director. (Tr. 17, 55).

Ferrell had a history of heart disease and underwent an angioplasty in 1995 before returning to work for the next ten years. When Ferrell was seen by her cardiologist on July 19, 2004 and August 11, 2005, she denied any new symptoms, though it was noted that Ferrell continued to smoke despite medical advice to cease. (Tr. 175 – 176). After suffering a stroke, an MRI study of Ferrell's brain on July 27, 2006 was interpreted as demonstrating a subacute

hemorrhage cortical infarct involving the right occipital lobe medially. (Tr. 211). An MRI study on August 3, 2006 did not show any significant interval change. (Tr. 210). An MR angiography of the head on that same date was normal. (Tr. 213).

In September 2006, E.W. Donelan, M.D., reviewed the record on behalf of the state agency and opined that Ferrell could perform the full range of medium work. (Tr. 253 – 259). In January 2007, Julio Pardo, M.D., reviewed the record on behalf of the state agency and concurred with Dr. Donelan's opinion. (Tr. 260 – 262).

An MRI of the brain on December 1, 2006 indicated a small old cortical infarct of the right occipital lobe medially with interval clearing of the hemorrhagic component when compared to the prior study of August 3, 2006. (Tr. 263). A December 1, 2006 MRI of Ferrell's lumbar spine showed minimal disc bulging at L2-3, L4-5, and L5-SI, and a tiny central disc herniation at L4-5, which "slightly" compressed the thecal sac without compressing the neural structures. (Tr. 265 – 266). An MRI of the cervical spine on that date was normal. (Tr. 267). A progress note dated September 12, 2008 described Ferrell's cardiac status as "stable" with no chest pain despite her continued smoking. (Tr. 366 – 368).

On October 1, 2008 Ferrell established care with a therapist and reported that she had recovered from her stroke. (Tr. 360). Ferrell indicated having difficulty coping with various problems including her health, her husband's health and loss of his job, loss of medical insurance, and various other financial/life circumstance issues. (Tr. 340, 360). Based on Ferrell's history and clinical presentation, the therapist diagnosed a generalized anxiety disorder and an adjustment disorder with depressed mood. (Tr. 350). The therapist assigned a current GAF score of 58, and a highest GAF score of 75. (Tr. 351). Ferrell was then seen by psychiatrist Rakesh Chandra, M.D., on October 16, 2008 and November 20, 2008. (Tr. 329 – 332). At the last

psychiatric visit, it was noted that Ferrell was doing well on her medication without any problems or difficulties. During the examination, she was pleasant, cheerful, and easy to talk to. Ferrell stated that she was "doing well in general." Her judgment and insight were intact. (Tr. 331). The psychiatrist indicated that Ferrell did not have to be seen for another three months. In a review with the counselor on January 7, 2009, it was observed that Ferrell was successfully meeting the goals of her treatment plan. (Tr. 339). On January 15, 2009, Dr. Chandra completed a mental residual functional capacity worksheet based upon the findings of treatment notes of Egyptian Health Department and examination of Ferrell. (Tr. 381 – 382). Dr. Chandra found that Ferrell had marked limitations in seven of the ten domains; carry out detailed instructions; ability to make judgments on simple work-related decision; interact appropriately with the public; interact appropriately with supervisors; interact appropriately with co-workers; respond appropriately to work pressures in a usual work setting and respond appropriately to changes in a routine work setting. *Id.*

On February 16, 2009, Stephen D. Knight, M.D. completed a physical residual functional capacity worksheet, and indicated that Ferrell had significant limitations, but could lift 20 pounds occasionally, operate foot controls continuously, and sit for six hours while standing and walking for another two hours during an eight-hour day. (Tr. 383 – 388).

At the March 3, 2009 hearing before the ALJ, medical expert Marvin Wolfe, M.D. testified that Ferrell could lift 20 pounds occasionally and 10 pounds frequently, stand or walk for up to four hours, sit for up to six hours, with breaks every two hours. (Tr. 52 – 53, 56 – 58). Dr. Wolfe also recommended that Ferrell avoid heights or dangerous machinery. (Tr. 53). Dr. Wolfe considered the evidence, such as MRI evidence of disc bulging, and explained how such conditions often have no symptoms, and so did not establish greater limitations. (Tr. 44). Dr.

Wolfe was presented with Dr. Knight's opinion of greater limitations, and explained that the opinion was unsupported. (Tr. 16 – 17, 63).

Also during the hearing, the ALJ asked vocational expert ("VE") Gregory Jones, M.S., to consider someone with Ferrell's background who was limited to a range of light work involving only simple, repetitive tasks with only brief and casual interaction with the public. (Tr. 58 – 59). The VE testified that, given all of these factors, such an individual could not perform Ferrell's past work (which the VE had identified as skilled and semi-skilled), but could perform the following representative light unskilled jobs nationally: housekeeper/cleaner (99,000 jobs), general cashier (300,000 jobs), information clerk (70,000 jobs), and usher (30,000 jobs). (Tr. 59 – 60).

## II.     CONCLUSIONS OF LAW

### A.  *Legal Background*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act ("Act") is limited to a determination of whether those findings are supported by substantial evidence. *42 U.S.C. § 405(g)* ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive…."); *Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003); *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); See also *White v. Barnhart*, 415 F.3d 654, 659 (7th Cir. 2005) (a reviewing court is not allowed to substitute its judgment for the ALJ's by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1972) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)); *Sims v. Barnhart*, 309

F.3d 424, 428 (7th Cir. 2002); *Green v. Shalala,* 51 F.3d 96, 101 (7th Cir. 1995). An ALJ's decision must be affirmed if the findings are supported by substantial evidence and if there have been no errors of law. *Golembiewski*, 32 F. 3d at 915; *Cannon v. Apfel,* 213 F.3d 970, 974 (7th Cir. 2000). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex. rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

DIB is available only to those individuals who can establish a "disability" under the terms of the Act. The claimant must show that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *42 U.S.C. § 423(d)(1)(A).*

The SSA regulations enumerate a five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing a disability. *20 C.F.R. §§ 404.1500 – 404.1599* for DIB.

The ALJ must first consider whether the claimant is presently employed or "engaged in substantial gainful activity." *20 C.F.R. § 404.1520(a)(4)(i).* If the claimant is, he or she is not disabled and the evaluation process is over; if he or she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments which "significantly limits…physical or mental ability to do basic work activities." *20 C.F.R. § 404.1520(a)(4)(ii).* If the claimant's impairment is not severe, then the process is over, and the claimant is considered not disabled. If the finding is severe, however, the ALJ must proceed to step three.

At step three, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. *20 C.F.R. § 404.1520(a)(4)(iii).* If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. *Id.* However, if

the impairment does not so limit the claimant's remaining capabilities, in step four, the ALJ reviews the claimant's "residual functional capacity," ("RFC") and the physical and mental demands of his or her past work. *20 C.F.R. § 404.1520(a)(4)(iv)*. If, at this fourth step, the claimant can perform his past relevant work, he will be found not disabled. *Id*. However, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts, at step five, to the Commissioner to establish that the claimant, in light of his or her age, education, work experience, and functional capacity to work, is capable of performing other work, and that such work exists in the national economy. *20 C.F.R. § 404.1520(a)(4)(v)*. If the claimant is either determined not to be capable of performing other work, or such work does not exist in the national economy, the ALJ will enter a finding that claimant is disabled.

The law governing disability determinations provides that ALJs are not required to discuss every piece of evidence; however, they must build a bridge of logic connecting evidence to their conclusion. Regarding credibility assessments, they must articulate the reasons behind their evaluation. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). This standard is not high; only minimal articulation is needed – that is, only enough to allow a reviewer to follow the ALJ's thought process is required. Once the Court understands the ALJ's reasoning, it can determine whether the rationale has support in the administrative record and meets the applicable legal standard. When the ALJ does not minimally discuss or explain the reasons for rejecting evidence, the Court cannot initiate its review.

   *B. Analysis*

After considering the evidence, the ALJ concluded that Ferrell was not disabled. (Tr. 7 – 19). In this appeal, Ferrell argues that: (1) the ALJ erred by not applying Medical Vocational

Guideline Rule 201.14 after Ferrell reached the age of 50, and (2) the ALJ erred in finding that Ferrell's mental impairments did not meet listing 12.04.

### I. *Failure to Apply Medical Vocational Guideline Rule 201.14*

Medical Vocational Guideline Rule 201.14 is part of a series of tables broken into separate rules which classify a disability claimant as either disabled or not disabled based on the claimant's physical capacity, age, education, and work experience. "Each numbered rule in the appendix resolves the issue of capability to do other work by addressing specific combinations of the factors (*i.e.*, RFC, age, education, and work experience) that determine capability to do work other than that previously performed. The criteria for each factor contained within a rule are defined in the regulations. Resolution of the issue of capability to do other work is indicated in the "Decision" column (*i.e.*, "Disabled" or "Not disabled") for the particular rule….Where the findings regarding each factor coincide with the criteria for the corresponding factor in a rule, that rule applies and directs a decision of "Disabled" or "Not disabled." Where one or more of the criteria of a rule are not met, no decision is directed…." *SSR 83-10. See also 20 C.F.R. § 404.1569* ("…we do not apply these rules if one of the findings of fact about the person's vocational factors and residual functional capacity is not the same as the corresponding criterion of a rule. In these instances, we give full consideration to all relevant facts in accordance with the definitions and discussions under vocational considerations.) A person with both exertional and non-exertional limitations must be found disabled if her exertional limitations and vocational factors alone would direct a finding of disabled under the Medical Vocational Guideline Rules. These rules, however, are only to be applied in a situation where the claimant is limited to substantially no more than the regulatory definition of the disabling exertional level. *SSR 83-12*. When the exertional RFC falls between two exertional levels and a finding of "not disabled" is

directed by the higher exertional level, then the ALJ should generally rely on vocational expert testimony. *Id.*

Dr. Wolfe testified that Ferrell could "occasionally lift up to 20 pounds and frequently 10 pounds." (Tr. 53). Dr. Wolfe further testified that Ferrell could walk and stand for up to four hours each, and sit for up to six hours, with breaks every two hours. Tr. (56 – 58). Dr. Wolfe also recommended that Ferrell avoid heights or dangerous machinery (Tr. 53). Light work is defined by 20 C.F.R. § 404.1567(b) to involve lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. (Tr. 53). To be capable of performing all light jobs, a person must also be capable of standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday, and sitting may occur intermittently during the remaining time. *SSR 83-10*. The ALJ, therefore, reasonably found that Ferrell could perform light work as defined in 20 C.F.R. § 404.1567(b). The ALJ continued, however, by finding that Ferrell could not perform the *full* range of light work. (Tr. 18). As the ALJ stated, Ferrell's "…ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base…the vocational expert…[was asked]…whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity." *Id.*

At the hearing, vocational expert Gregory Jones, M.S., was asked to consider someone with Ferrell's background who was limited to a range of light work involving only simple, repetitive tasks with only brief and casual interaction with the public. (Tr. 58 – 59). The Mr. Jones testified that, given all of these factors, such an individual could not perform Ferrell's past work (which Mr. Jones had identified as skilled and semi-skilled), but could perform the

9

following representative light unskilled jobs nationally: housekeeper/cleaner (99,000 jobs), general cashier (300,000 jobs), information clerk (70,000 jobs), and usher (30,000 jobs). (Tr. 59 – 60). The ALJ recognized that had Ferrell been able to perform the full range of light work, the guidelines would have directed a finding of "not disabled" under either Medical Vocational Guideline Rule 202.21 or rule 202.14 depending on whether Ferrell was reaching advanced age or still a younger individual. (Tr. 18). However, as stated above, the ALJ found that Ferrell could not perform the full range of light work. Again, where someone has additional non-exertional limitations that significantly reduce the number of jobs they can perform at a particular exertional level, the "use of the Guidelines is precluded." *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993). Although the ALJ determined that Ferrell was unable to perform the full range of light work, such a finding does not mean that Ferrell was limited to only sedentary work. Because the ALJ reasonably found that Ferrell fell between two exertional levels (greater than the full range of sedentary, but less than the full range of light), the ALJ did not err when she properly failed to apply Medical Vocational Guideline Rule 201.14.

## II. *Failure to Find that Ferrell Met Listing 12.04*

Ferrell next argues that the ALJ erred in failing to find that Ferrell's mental impairments met Medical Listing 12.04. Medical Listing 12.04 is titled "Affective Disorders." The listing states, in part, that these disorders are:

> "Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation. The required level of severity for these disorders is met when the requirements in both A and B are satisfied…"
>
> A. Medically documented persistence, either continuous or intermittent, of one of the following:
>
> > 1. Depressive syndrome characterized by at least four of the following:

          a. Anhedonia or pervasive loss of interest in almost all activities; or
          b. Appetite disturbance with change in weight; or
          c. Sleep disturbance; or
          d. Psychomotor agitation or retardation; or
          e. Decreased energy; or
          f. Feelings of guilt or worthlessness; or
          g. Difficulty concentrating or thinking; or
          h. Thoughts of suicide; or
          i. Hallucinations, delusions or paranoid thinking…

    B. Resulting in at least two of the following:
        1. Marked restriction of activities of daily living; or
        2. Marked difficulties in maintaining social functioning; or
        3. Marked difficulties in maintaining concentration, persistence, or pace; or
        4. Repeated episodes of decompensation, each of extended duration…"
*20 C.F.R. Pt. 404, Subpt. P, App. 1*.

The listing also requires that the "marked" levels of difficulty be sustained "for a continuous period of at least 12 months" and that her extended episodes of decompensation take place during that same period. *20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A*.

In support of her argument, Ferrell reasons that the ALJ erred in failing to find that her mental impairments met Medical Listing 12.04 in light of the mental residual functional capacity worksheet filled out by Dr. Chandra, and by not procuring a second medical expert for the hearing. As stated previously, Dr. Chandra found that Ferrell had marked limitation in seven of the ten domains listed on the mental RFC worksheet. Ferrell argues that these findings support the fact that she met the part B criteria.

There is no indication from the record that the ALJ disputed that Ferrell met the criteria established in part A of medical listing 12.04. Therefore, in order for Phillips to qualify as disabled under medical listing 12.04, she needed to establish that she suffered from at least two of the criteria established in part B. With respect to the part B criteria, the ALJ stated that Ferrell's:

>mental impairments…do not meet or medically equal the criteria of listing[] 12.04….In making this finding, the undersigned has considered whether the 'paragraph B' criteria are satisfied….[T]he claimant has only a mild mental limitation in her ability to perform normal activities of daily living. The claimant has moderate mental limitations in her ability to engage in social functioning and to perform activities requiring concentration, persistence or pace. There is no evidence that the claimant has ever had an episode of mental decompensation….
>(Tr. 13).

The areas of marked limitation listed on the mental RFC filled out by Dr. Chandra are quite specific.  They are the ability to: (1) carry out detailed instructions; (2) make judgments on simple work-related decision; (3) interact appropriately with the public; (4) interact appropriately with supervisors; (5) interact appropriately with co-workers; (6) respond appropriately to work pressures in a usual work setting, and (7) respond appropriately to changes in a routine work setting. (Tr. 381 – 382).  In contrast, the broad part B criteria are: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; and (4) repeated episodes of decompensation. *20 C.F.R.  Pt. 404, Subpt. P, App. 1*.

The mental RFC criteria do not overlap the part B criteria.  That is, a marked limitation in any or all of the RFC criteria does not necessarily mean that there will be a finding of at least two part B criteria.  The Seventh Circuit has held that when a claimant contends that the ALJ erred in a listing finding, remand is not appropriate unless the claimant identifies evidence ignored by the ALJ indicating that he at least may have met or equaled a listing. *Sims v. Barnhart*, 309 F.3d 424, 429 (7th Cir. 2002).  There is no indication in the record that the ALJ ignored the mental RFC statement of Dr. Chandra.  Furthermore, listing 12.04 requires that the "marked" levels of difficulty be sustained "for a continuous period of at least 12 months" and that her extended episodes of decompensation take place during that same period. *20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A*.  Ferrell's argument that Dr. Chandra's mental RFC statement supports a

finding that she met the part B criteria must also fail because Dr. Chandra saw Ferrell only during a two-month period in October and November 2008 (Tr. 17). This is significantly less than the "continuous period of at least 12 months" required to meet the listing. *20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A*. Dr. Chandra mental RFC statement also did not suggest that Ferrell was expected to have marked limitations for a period of twelve months, and she offered her mental RFC statement in January 2009 after seeing Ferrell for the first time only three months earlier (Tr. 331). Dr. Chandra's opinion, therefore, did not support the necessary listing criteria of 12 continuous months of two part B criteria.

The failure to procure a second medical expert for a hearing is a matter left to the discretion of the ALJ. *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). In *Skarbek*, the Court stated that "[h]ere, the evidence was adequate for the ALJ to find [Plaintiff] not disabled, and the ALJ acted within his discretion in deciding not to call a medical expert." *Id. See also Nicholson v. Astrue*, 341 F. App'x. 248, 254 (7th Cir. Aug 18, 2009) ("We do not doubt that an additional medical opinion at the time of the hearing would have been helpful (one way or the other), but the question before us is whether the ALJ's decision to rest on the record that he had was an abuse of discretion. We think not.").

The ALJ built a sufficient bridge of logic by weighing all of the evidence presented, and therefore did not err in finding only mild limitations in Ferrell's ability to perform normal activities of daily living, moderate limitations in Ferrell's ability to engage in social functioning and to perform activities requiring concentration, persistence, or pace, and no evidence of an episode of mental decompensation. Furthermore, the failure to call a second medical expert for the hearing was not an abuse of discretion. Because the ALJ did nor err in her analysis of the

part B criteria, she did not err in determining that Ferrell did not meet the criteria established in Medical Listing 12.04.

### III.   RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that the final decision of the Commissioner be **AFFIRMED,** and that the Court adopt the aforementioned findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1 (b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objections thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**SO RECOMMENDED.**

**DATED: December 17, 2010.**

> */s/ Philip M. Frazier*
> HON. PHILIP M. FRAZIER
> UNITED STATES MAGISTRATE JUDGE